No. 21,019.

THE CITY OF KANSAS CITY, KAN., *Appellant*, V. HARRY JOR-
DAN, *Appellee.*

SYLLABUS BY THE COURT.

1, CITY ORDINANCE—*Transportation of Liquors—Powers of Cities of
First Class.* Under the laws of this state cities of the first class
have power to pass ordinances regulating the transportation of in-
toxicating liquors for legal purposes and prohibiting such transporta-
tion for illegal purposes.

2. SAME—*Sufficient Title to Ordinance.* The ordinance attacked con-
tains but one subject and that subject is clearly expressed in the
title.

3. SAME—*Provisions of Ordinance—Consistent with State Laws.* A
city ordinance regulating the transportation of intoxicating liquors
for legal purposes, and prohibiting such transportation for illegal
purposes, is consistent with the law of this state regulating the
transportation and delivery of intoxicating liquors.

4. SAME—*Interstate Commerce.* Such an ordinance as is mentioned in
section 1 of this syllabus is not an unlawful regulation of interstate
commerce.

5. SAME—*Ordinance is Law of this State.* Such an ordinance as is
mentioned in section 1 of this syllabus is a law of this state within
the meaning of the United States constitution, and of the Webb-Ken-
yon act (Part 1, 37 U. S. Stat. at Large, ch. 90, p. 699).

6. SAME—*Unnecessary Allegations in Complaint.* In charging an of-
fense under a city ordinance, it is not necessary to plead any of the
exceptions named in the ordinance, where such exceptions are not
contained in the clause which creates the offense.

7. CITY ORDINANCE — *Violating State Law — Invalid.* An ordinance
which attempts to regulate the transportation of intoxicating
liquors within the city for legal purposes, and to prohibit such trans-
portation for illegal purposes, but which does not permit the trans-
portation of such liquors for all of the purposes recognized as legal
by the law of the state, is invalid; and a judgment quashing a com-
plaint drawn under such an ordinance will be sustained.

Appeal from Wyandotte district court, division No. 2;
FRANK L. HUTCHINGS, judge. Opinion filed February 10, 1917.
Affirmed.

*Hugh J. Smith*, city attorney, *Lee Judy*, and *Thomas M. Van Cleave*, both of Kansas City, for the appellant.

*Thomas A. Pollock*, of Kansas City, *R. J. Ingraham*, and *L. E. Durham*, both of Kansas City, Mo., for the appellee.

*William H. McCamish*, of Kansas City, as *amicus curiæ*.

The opinion of the court was delivered by

MARSHALL, J.: The plaintiff appeals from a ruling of the trial court quashing a complaint drawn under a city ordinance. The ordinance, including its title, is as follows:

"ORDINANCE No. 11,500.

"An Ordinance relating to the suppression of the sale and delivery of intoxicating liquors; declaring property used in connection therewith nuisances, and providing for the abatement of such nuisances.

"*Be it Ordained by the Board of Commissioners of the City of Kansas City, Kansas.*

"SECTION 1.  That it shall be unlawful for any person, firm or corporation to drive or operate upon any boulevard, street, avenue, alley, public highway, or public ground of the City of Kansas City, Kansas, any car, wagon, truck, or vehicle, the cargo of which consists wholly or partly of any intoxicating liquor; excepting as hereinafter provided in Section 6.

"SECTION 2.  The driving or operating upon any boulevard, street, avenue, alley, public highway or public ground of said City any car, wagon, truck or vehicle, the cargo of which consists wholly or partly of any intoxicating liquor, and such car, wagon, truck or vehicle, and the cargo thereon, and any animal or animals drawing the same, are hereby declared to be common nuisances, excepting as hereinafter provided in Section 6.

"SECTION 3.  The driving or operating upon any boulevard, street, avenue, alley, public highway or public ground of said city of any car, wagon, truck or vehicle, upon which is inscribed, lettered, pasted, or upon which is carried so as to be exposed to the public view, the name of any person, firm or corporation engaged in the manufacture, sale or distribution of intoxicating liquors, or upon which vehicle or cargo appears any word, sign, emblem, device or object which indicates in any way that the cargo of such vehicle above mentioned and referred to consists wholly or partly of intoxicating liquors, is hereby declared to be unlawful and to constitute a common nuisance.

"SECTION 4.  Any person, company, firm or corporation violating any of the provisions of Sections 1, 2 and 3 of this ordinance shall be deemed guilty of a misdemeanor and upon conviction before the Police Judge shall be fined in any sum not less than One Hundred Dollars ($100.00) nor more than Five Hundred Dollars ($500.00), and be imprisoned not less than thirty days nor more than six months for each offense, and ad-

judged to payment of costs, and shall be committed to the city jail until such fines and costs are paid.

"SECTION 5. The Chief of Police or any police officer of the City of Kansas City, Kansas, is hereby authorized upon the arrest of any person or persons found in charge of, operating, or assisting to operate any car, wagon, truck or vehicle upon any of the boulevards, streets, avenues, alleys, public highways, or public grounds of the City of Kansas City, Kansas, the cargo of which consists wholly or partly of any intoxicating liquors, or upon which appears any matter prohibited by Section 3 hereof, shall forthwith seize such conveyance or vehicle and an animal or animals drawing the same, and all intoxicating liquors thereon and hold the same until the trial of the person or persons arrested for driving or operating such conveyance or vehicle and upon conviction of such person or persons in the police court and the adjudging of such liquors and property to be a nuisance as defined in Section 1 and 2 hereof, all intoxicating liquors together with their containers so seized shall be forthwith destroyed by direction of the Chief of Police, and other property so seized shall be advertised for sale by the Chief of Police giving ten days' notice in the official city paper of the time and place of sale, and the proceeds derived from such sale shall be applied first, to the expense of the sale, and any surplus shall be applied to the payment of fines and costs of the person or persons convicted of operating such nuisance if the property belonged to such person or persons; and if such property belonged to any person or persons not a party to the suit, such proceeds shall be paid to the owner of the property; provided, that any person may have a trial as to his rights of property in any of the articles so seized by serving a notice in writing to that effect upon the Chief of Police at any time before the trial of the person from whom such property was taken, whereupon, the Police Judge shall set the same down for trial and may hear and determine the same so far as it affects the right of the officer to seize and hold the same for a violation of this ordinance, which trial may be had in connection with or separately from, the trial of the person from whom the property or goods were taken.

"SECTION 6. Nothing in this ordinance shall be construed to prevent any person from bringing into the city, personally, intoxicating liquors purchased outside of the State of Kansas, nor to prevent any such purchaser from receiving through a common carrier within the city intoxicating liquors purchased by any such person outside of the State of Kansas and to which intoxicating liquors the title vested in the purchaser outside of the State of Kansas, when such intoxicating liquors are intended to be possessed and received by such purchaser for his personal use.

"SECTION 7. All persons, firms or corporations doing business outside of the City of Kansas City, Kansas, which shall sell in such outside state or territory any intoxicating liquors to residents of the City of Kansas City, Kansas, shall file daily with the City Clerk of the City of Kansas City, Kansas, a carbon copy of each and every order taken upon

which such intoxicating liquor is sold, and also shall file with the city clerk the names and addresses of every purchaser to whom such intoxicating liquor is consigned, and a failure to so report such sales shall be a misdemeanor and upon conviction of such failure any person so failing shall be fined in any sum not less than five dollars nor more than twenty-five dollars."

The count of the complaint against which the motion to quash was filed is as follows:

"Before the Police Court, J. H. Brady, Judge, J. M. Dunlavy complains of Harry Jordan, and being duly sworn, on oath says that he, the said Harry Jordan, at and in the city of Kansas City, county of Wyandotte and State of Kansas, and on or about the 2nd day of November, 1915, did unlawfully drive and operate upon the streets, avenues, boulevards, alleys and public highways of said city, a certain truck or wagon, the cargo of which then and there consisted of intoxicating liquors, to-wit, about eleven (11) empty and sixteen (16) full cases of beer, the said Harry Jordan not being engaged in any manner as a common carrier delivering liquors previously purchased outside of the state of Kansas, but was transporting said beer about the streets for an unlawful purpose, in violation of Section 1 of Ordinance No. 11500 of the ordinances of the City of Kansas City, Kansas."

The grounds of the defendant's motion to quash the complaint are that the complaint does not state facts sufficient to constitute an offense, and that the ordinance is invalid for a number of stated reasons.

1. The defendant insists that the ordinance is void because no power to enact it has been delegated to the city. The defendant argues that, because section 5532 of the General Statutes of 1915 authorizes cities to pass ordinances prohibiting the sale of intoxicating liquor and suppressing common nuisances, and no other authority is specifically given, the city has no power to pass any other ordinance having for its object the suppression of the traffic in intoxicating liquor.

Section 1221 of the General Statutes of 1915 reads:

"The mayor and council may levy and collect a license tax upon and regulate any and all callings, trades, professions and occupations conducted, pursued, carried on or operated within the limits of such city, including . . . express companies and agencies, . . . and all wagons and other vehicles transporting merchandise or passengers for pay."

This statute is a part of the charter powers of cities of the first class operating under the mayor and council form of gov-

ernment, and is retained in the charter powers of such cities operating under the commission form of government. (Gen. Stat. 1915, § 1665.)   Under both forms of government cities of the first class have power—

"To make all needful police regulations necessary for the preservation of good order and the peace of the city, and to prevent injury to or the destruction of or interference with public or private property." (Gen. Stat. 1915, §§ 1094, 1508.)

This is known as the general welfare clause.   Broad and varied powers are granted by this clause.   A brief statement of these powers is found in section 895 of volume 3 of Mc-Quillin on Municipal Corporations, where the author says:

"Specifically, under the general welfare clause, or by virtue of general grant of power (as will clearly appear from the sections which follow), municipal corporations are authorized to enact appropriate and reasonable ordinances, to preserve the health and provide necessary and desirable sanitary regulations for the local population, to abate nuisances and regulate various kinds of occupations that may become nuisances or detrimental to the public health; to provide for the public safety by preventing obstructions of the streets, public ways and places, regulating the use of vehicles thereon, the storing of explosives, blasting, the movement of street cars and railroad trains, the erection of buildings and other structures by establishing fire limits, and forbidding wooden buildings in designated portions of the corporate area; to preserve the morals of the inhabitants by forbidding certain acts offensive to just ideas and sentiments of decency and propriety of conduct; to establish and regulate markets, hucksters, hawkers, etc., regulate milk inspection and prevent adulteration of foods; to provide for the weighing and measuring of articles sold to the inhabitants; and finally to require or prohibit the doing of many other things incident to congested centers, to the end that the public welfare may be advanced.

"In brief, under this general grant of power, ordinances may be passed which are necessary and beneficial, and they will be adjudged valid by the courts, provided they are reasonable and consonant with the general powers and purposes of the local corporation, and not inconsistent with the laws and policy of the state."

Section 5505 of the General Statutes of 1915 imposes on mayors, marshals, police judges, and police officers of cities the duty to notify the county attorney of any violation of the intoxicating liquor law of this state, and prescribes severe punishment and forfeiture of office for failure to comply with the statute.   Sections 686a to 686o of the code of civil procedure (Gen. Stat. 1915, §§ 7603-7617), provide a simple and effective method for the removal of city officers who fail to

perform any duty enjoined on them by law. Section 5559 of the General Statutes of 1915 provides:

"That every wife, child, parent, guardian or employer, or other person, who shall be injured in person or property or means of support by any intoxicated person, or in consequence of intoxication, habitual or otherwise, of any person, shall have a right of action in his or her own name against any incorporated city of this state wherein the intoxicating liquors were sold, bartered or given away in violation of law which caused the intoxication of such person, for all damages actually sustained, as well as exemplary damages."

It would not be reasonable to impose these serious consequences on cities and on city officers and at the same time to deprive cities of the right to exercise every legitimate power to suppress the illegal traffic in intoxicating liquors. Sections 1094, 1221, 1508 and 1665 of the General Statutes of 1915, when construed with the statutes of this state concerning intoxicating liquors, and with those imposing heavy duties and severe penalties on cities and city officers, should be held to grant power to cities to pass ordinances regulating the transportation of intoxicating liquors for legal purposes, and prohibiting such transportation for illegal purposes. Such ordinances may properly specify the class of persons that may engage in such lawful transportation, may license or otherwise authorize them to engage therein, and may impose such restrictions and conditions as will secure their obedience to the laws of the state and to city ordinances. For the purposes of transportation, intoxicating liquors should not be classed with harmless and useful articles of trade and commerce. Such liquors should be classed with those articles that are known to be dangerous and over which cities have control for the preservation of the peace and for the protection of the health, morals and safety of the city. In other words, intoxicating liquors should not be classed with flour and clothing, but should be classed with explosives, poison, diseased animals, and articles that spread contagion and disease among men, and should be treated accordingly. Much of the reasoning found in *The State v. Railway Co.*, 96 Kan. 609, 152 Pac. 777, is applicable here. The city has authority to regulate the legal transportation in intoxicating liquors and to prohibit their illegal transportation. *O'Neal v. Harrison*, 96 Kan. 339, 150 Pac. 551; *Kansas City v. Henre*, 96 Kan. 794, 153 Pac.

548; *Desser v. City of Wichita,* 96 Kan. 820, 153 Pac. 1194; and *Kleinhein v. Bentley,* 98 Kan. 431, 157 Pac. 1190, support the conclusion that the city has authority to pass such an ordinance.

2. It is urged that the ordinance is void because the subject thereof is not clearly expressed in its title, and because the ordinance contains more than one subject. An examination of the ordinance and of its title shows that neither of these contentions can be rightfully upheld.

3. It is argued that the ordinance is void because it is repugnant to the provisions of sections 5544 to 5554 of the General Statutes of 1915. These sections of the statutes regulate the transportation and delivery of intoxicating liquors in this state, and are commonly known as the Mahin law. Section 5544 reads:

"It shall be unlawful for any railroad company, express company or other common carrier, or for any person, company or corporation to carry any intoxicating liquor into this state or from one point to another within the state for the purpose of delivery, or to deliver the same to any person, company or corporation within the state except for lawful purposes."

Ordinances regulating the transportation of intoxicating liquors for purposes recognized as legal by the laws of this state, and prohibiting the transportation of such liquors for all illegal purposes, are entirely consistent with the Mahin law. Such ordinances are valid when the purposes for which intoxicating liquors may be lawfully transported within this state are recognized.

4. The defendant argues that the ordinance is a regulation of lawful interstate commerce and therefore void. Omitting that part of the Webb-Kenyon law which is irrelevant to the subject now under consideration, the title and text of the act are as follows:

"An act divesting intoxicating liquors of their interstate character in certain cases.

"That the shipment or transportation, in any manner or by any means whatsoever, of any spirituous, vinous, malted, fermented, or other intoxicating liquor of any kind, from one state, territory, or district of the United States, · . . . which said spirituous, vinous, malted, fermented, or other intoxicating liquor is intended, by any person interested therein, to be received, possessed, sold, or in any manner used, either

in the original package or otherwise, in violation of any law of such state, territory, or district of the United States, . . . is hereby prohibited." (Part 1, 37 U. S. Stat. at Large, ch. 90, p. 699.)

Under that act, there is no interstate commerce in intoxicating liquors except as the law of the state may recognize the legality of their sale or transportation. In a decision of the supreme court of the United States, rendered January 8, 1917, in *Clark Distilling Co. v. West'n Md. Ry. Co.*, 242 U. S. 311, that court said:

"As the state law forbade the shipment into or transportation of liquor in the state whether from inside or out, . . . and as the Webb-Kenyon act prohibited the transportation in interstate commerce of all liquor 'intended to be received, possessed, sold or in any manner used, either in the original package or otherwise, in violation of any law of such State,' there would seem to be no room for doubt that the prohibitions of the state law were made applicable by the Webb-Kenyon Law." (p. 321.)

That decision completely disposes of the defendant's contention concerning interstate commerce.

5. The defendant insists that the ordinance is not a law of the state within the meaning of the Webb-Kenyon act. Kansas City is an agency of the state in the exercise of governmental functions. The city is authorized and commanded to assist in the suppression of the illegal traffic in intoxicating liquors. The ordinances of the city are local laws, passed under the authority of the state. In *New Orleans Waterworks v. New Orleans*, 164 U. S. 471, the supreme court of the United States said:

"In view of the adjudged cases, it can not be doubted that the legislature may delegate to municipal assemblies the power of enacting ordinances that relate to local matters, and that such ordinances, if legally enacted, have the force of laws passed by the legislature of the state and are to be respected by all." (p. 481.)

In *N. O. Waterworks v. La. Sugar Co.*, 125 U. S. 18, the supreme court of the United States said:

"So a by-law or ordinance of a municipal corporation may be such an exercise of legislative power delegated by the legislature to the corporation as a political subdivision of the state, having all the force of law within the limits of the municipality, that it may properly be considered as a law, within the meaning of this article of the constitution of the United States." (p. 31.)

In *North American Storage Co. v. Chicago*, 211 U. S. 306, the court said:

"In this case the ordinance in question is to be regarded as in effect a statute of the state, adopted under a power granted it by the state legislature, and hence it is an act of the state within the Fourteenth Amendment." (p. 313.)

The defendant's argument that the ordinance is an interference with interstate commerce must be based on the proposition that the ordinance is a law of the state within the meaning of the federal constitution. If the ordinance is a law of the state within the meaning of constitutional inhibitions, it must be a law of the state when those inhibitions are removed. It follows that when the constitutional protection of interstate commerce in intoxicating liquors is withdrawn, there is nothing left with which the ordinance can interfere; and it follows that the ordinance, passed under authority given by the legislature, is a law of the state within the meaning of the Webb-Kenyon act.

6. The defendant contends that "the ordinance is not validated by the allegation in the complaint that the defendant was transporting the liquors about the streets for an unlawful purpose, in violation of section 1 of ordinance No. 11500." The complaint alleges more than is necessary. The exceptions named in section 6 of the ordinance are not a part of the clause which creates the offense, and therefore need not be set out in the complaint. In *The State of Kansas v. Thompson*, 2 Kan. 432, this court said:

"The rule is: If there be any exceptions contained in the same clause of the act which creates the offense, the indictment must show negatively that the defendant, or the subject of the indictment, does not arise within the exception. But if a proviso be in a subsequent clause or statute, or although in the same section, yet if it be not incorporated with the enacting clause by any words of reference, it is in that case matter of defense for the other party, and need not be negatived in the pleading." (Syl. ¶ 2.)

In *City of Kansas City v. Garnier*, 57 Kan. 412, 46 Pac. 707, in a prosecution under a city ordinance, this court said:

"In a clause of such an ordinance distinct from the one defining the offense there was a proviso to the effect that it is unnecessary to furnish a description of property purchased from manufacturers or wholesale dealers who have an established place of business, or which has been

purchased at an open sale. *Held* that, the proviso being in a subsequent clause and not incorporated in the definition of the offense, it was unnecessary to negative it in the complaint." (Syl. ¶ 4.)

This rule was followed in *The State v. Thurman,* 65 Kan. 90, 68 Pac. 1081; *The State v. Buis,* 83 Kan. 273, 111 Pac. 189; and in *The State v. Creamery Co.,* 83 Kan. 389, 111 Pac. 474.

It was not necessary for the city to plead any of the exceptions named in the ordinance, nor any existing under the laws of this state.

7. Another question presented by the motion to quash, and embraced in the attack on the validity of the ordinance, but not argued by either of the parties to this action, is this: Are the exceptions contained in section 6 of the ordinance broad enough to include the recognized lawful traffic in intoxicating liquors in this state? Section 5499 of the General Statutes of 1915 is as follows:

"Any person who shall directly or indirectly sell or barter any spirituous, malt, vinous, fermented or other intoxicating liquors, shall be deemed guilty of a misdemeanor, and upon conviction thereof, shall be fined in any sum not less than one hundred dollars, nor more than five hundred dollars, and be imprisoned in the county jail not less than thirty days, nor more than ninety days; provided, that any person, copartnership or corporation engaged in the wholesale drug business and having a stock, exclusive of alcohol, of not less than sixty thousand dollars may sell alcohol for medicinal, mechanical and scientific purposes to registered pharmacists who are actually and in good faith engaged in the retail drug business, such sales to be in quantities of not less than one gallon nor more than five gallons."

This statute gives certain wholesale druggists a legal right to sell alcohol to certain registered pharmacists. If the ordinance does not expressly or impliedly make an exception in favor of all legitimate transportation of intoxicating liquors, it can not be upheld. In this state, a registered pharmacist who legally purchases alcohol from a wholesale druggist has a right to have that alcohol transported over the streets of the city and delivered to him at his place of business. Because the exceptions in section 6 of the ordinance do not include all transportation in intoxicating liquor recognized as legal by the laws of this state, the ordinance must be held invalid. It follows that the motion to quash the complaint was properly sustained.

The judgment is affirmed.